In re WHITNEY.

(Circuit Court, D. Delaware. November 28, 1892.)

CUSTOMS DUTIES—CLASSIFICATION—BOILER FLUES.

Certain imported articles were invoiced as "Purves' ribbed boiler flues." They consisted of ribbed cylinders flanged at one end, designed and adapted for use in the boilers of steamboats. They are made to order, and delivered in the condition in which they leave the factory, and are known by the inventor, maker, importer, and seller, and by practical engineers, as "ribbed boiler flues." Both English and American patents have been issued for them as an "improvement in boiler flues." Well-known scientific works describe these articles as "flues," etc. An extensive manufacturer of corrugated furnace flues, similar in all essential features to the articles in question, advertised such articles as "corrugated boiler flues with flanged or plain ends." They were in use for nearly four years prior to the tariff of October 1, 1890. *Held*, that the articles are dutiable as "boiler flues," under Schedule C, par. 157, at 2 1-2 cents per pound, and not at 45 per centum ad valorem under Schedule C, par. 215, as manufactures not specially enumerated, composed wholly or in part of iron, steel, etc.

Application for a Review of the Board of General Appraisers' Decision. Affirmed.

Curie, Smith & Mackie, for petitioner.

Beniah Watson, U. S. Dist. Atty., and John Proctor Clark, for the United States.

WALES, District Judge. This is an application by the importer, under the provisions of section 15 of the act of congress entitled "An

act to simplify the laws in relation to the collection of the revenue," approved June 10, 1890, (26 St. U. S. 138,) for the review of a decision made by the board of United States general appraisers, reviewing the classification for duty by the collector of the port of Wilmington, of certain goods entered at said port on the 21st of August, 1891. The imported articles were invoiced as "4 Purves' ribbed boiler flues," which were claimed by the importer to be dutiable at 2 1-2 cents per pound, under paragraph 157, Schedule C, of the act of congress of October 1, 1890, entitled "An act to reduce the revenue, and equalize duties on imports, and for other purposes," (26 St. U. S. 567,) which reads as follows: "Boiler or other tubes, pipes, flues, or stays, of wrought iron or steel, two and one half cents per pound." The collector held that the imported articles were dutiable under the provisions of paragraph 215, Schedule C, of the same act, as follows: "Manufactures, articles, or wares, not specially enumerated in this act, composed wholly or in part of iron, steel, lead, copper, nickel, pewter, zinc, gold, silver, platinum, aluminum, or any other metal, and whether partly or wholly manufactured, forty-five per centum ad valorem." The importer protested against this classification, and his protest has been sustained by the board of appraisers.

The imported articles consisted of certain ribbed steel cylinders, each one being 9 1-2 feet in length, 45 inches in diameter, flanged at one end, and weighing 3,104 1-2 pounds. They were manufactured at Sheffield, Eng., and the respondent is the sole importer of them in the United States. They are not kept in stock, but are made to order, and delivered to the purchaser in the condition in which they leave the factory. The importations in question were designed and adapted for the boilers of steamboats which were being built for the Stonington Line by the Harlan & Hollingsworth Company. The manner of their use may be described in the language of the government's witness (Kafer) in answer to the question:

"What is it necessary to do to them [the cylinders] before they are in a condition to be practically used in the boiler by having a fire built in them? Answer. Holes will have to be drilled in the flanges at either end, holes being drilled in other parts of the boiler to correspond; rivets inserted in these holes, riveted up ; the same made tight by calking. The bridge walls and grate bars are inserted in their proper places. A front is put in with a furnace door. Coal is put in the furnace. I am presuming now that other parts of the boiler are properly constructed. The coal may then be ignited."

When thus ready for use in a boiler, all of the cylinder, except about six inches at the front, would be surrounded by water. The cylinder has now become, in part, practically a furnace, and, as contended by the appellant, is no longer, if it ever was, a boiler flue, such as is provided for in paragraph 157, above quoted. On the other hand, it is claimed that the cylinders are none the less flues from being partly converted into furnaces after they have been put in place in the boiler.

A flue may be defined to be a pipe, tube, or passage for the conveyance of the products of combustion,—flame, smoke, hot gases, heated air, etc. The practical operation of the Purves flue is this: After the fire has been started, the smoke, flame, and hot air pass over the bridge wall into the bridge wall connection, thence through the direct flues to the back connection, and thence through the re-

turn flues to the uptake. The grate bars and bridge wall fill up from one half to two thirds of the cylinder, according to the length of the latter, which varies from 9 to 18 feet, so that some portion of it is used as a flue independently of the furnace appliances. This cylinder differs from the old-fashioned boiler flue in the use to which it is applied, but does it differ so widely as to lose the descriptive name and meaning of "flue?" It is a comparatively modern production, and has been largely substituted for the rectangular furnace in marine boilers.

So far as inventors, manufacturers, and importers can fix the designation of an article under the revenue laws, it has been done in the present case through letters patent, invoices, and advertisements. An English patent, No. 3,722, dated March 23, 1885, was issued to David Purves for "a new and useful improvement in boiler flues," and he subsequently obtained letters patent for the same invention from the United States, No. 372,487, dated November 1, 1887. This flue has acquired a high reputation among scientific writers and practical steam engineers, and is known as "Purves' ribbed flue," as "Purves' ribbed furnaces," and as "Purves' ribbed boiler flue." It is true that Mr. Whitney at one time issued a circular, advertising himself as the sole agent in the United States for the sale of "Purves' patent ribbed steel boiler furnaces;" but he had also, when a member of the firm of Williams & Whitney, in 1889, advertised these same articles as "Purves' patent ribbed boiler flues." It is also true that on a previous importation of articles of the same kind and make, they were invoiced as "2 patent Purves' ribbed steel furnaces," and that the duty of 45 per cent. ad valorem on them was paid without protest; but the invoice contained the following words on its face: "Memo. Above flues sent to replace two similar flues shipped per Indiana on 17 Jan. to above-named Harlan and Hollingsworth Co."

The most conclusive evidence on the question of nomenclature is perhaps that furnished by the advertisements of the Continental Iron Works, of Brooklyn, N. Y. This concern is a large manufacturer of corrugated furnace flues, which are similar in all essential features to the Purves ribbed flues, and are applied to the same uses; the only difference being that the former are corrugated, and the latter are ribbed. In the Scientific American, the Iron Age, Power, and similar publications, running through the years 1887, 1888, 1889, 1890, and 1891, may be found the following advertisement:

"The Continental Iron Works, Brooklyn, N. Y. Sole manufacturers of corrugated boiler flues, under their own patents and those of Samson Fox, of Leeds, England. Made in all sizes, with flanged or plain ends."

In addition to this, among other exhibits containing descriptive advertisements, will be found a little book, (Exhibit M,) with the following title:

"Fox's Patent Corrugated Boiler Flue. A description of the processes pursued in the various stages of their manufacture, etc. Presented by the sole manufacturers, the Leeds Forge Company, Limited. Samson Fox, C. E., Managing Director, Leeds, 1886."

This book contains a cut illustrating the manufactured article, which is precisely similar in all respects—corrugations being substi-

tuted in place of ribs—to the Purves flue. It was strongly urged in argument that congress did not intend to include this kind of flue in paragraph 157, and that the flue there referred to means the old boiler flue mentioned in the previous tariff acts, and before the inventions of Purves and of Fox were known. But we have no certain assurance of that construction, and whenever the intention of congress is uncertain the benefit of the doubt must be in favor of the importer.

Here is an article known by the inventor and the maker, by the importer, and by practical engineers, as a "ribbed furnace flue" or a "ribbed boiler flue," and occasionally as a "ribbed furnace;" but all being equivalent terms, and meaning the same thing. These newly-invented flues had been in use for nearly four years before the passage of the act of October 1, 1890, and were well known in the navy department of the United States, and it is fairly presumable that they were not unknown to congress. The old flue imparted heat to the water surrounding it, and so does the modern flue, whether the latter is made under the Purves patent or under the Fox patent. The scientific works of acknowledged authority, found among the exhibits, with one exception, speak of the Purves invention as "a flue when used as a furnace," and reports of naval officers to the navy department make use of like expressions. But, as already observed, the advertisements of the "corrugated boiler flues" made by the iron works at Brooklyn, accompanied by an illustrative cut of one of the manufactured products, stamped "Corrugated flue," would seem to be decisive of the whole question, both as to the name and to the substance of the article imported.

It follows from what has been said that these goods are dutiable under paragraph 157 at 2 1-2 cents per pound, and that the decision of the board of appraisers must be affirmed.