## THOMAS v. F. B. VANDEGRIFT & CO.

(Circuit Court of Appeals, Third Circuit. May 5, 1908.)

### No. 2 (1,553).

1. CUSTOMS DUTIES—CLASSIFICATION—"FURNACES"—BOILER TUBES—FLUES.

The provision for "furnaces," in Tariff Act July 24, 1897, c. 11, § 1, Schedule C, par. 152, 30 Stat. 163 (U. S. Comp. St. 1901, p. 1641), does not include so-called arched Purves furnaces, consisting simply of corrugated steel cylinders or tubes, which are not furnaces in fact, but are intended to be used in the manufacture of furnaces. Such articles are dutiable under the provision in the same paragraph for boiler tubes or flues.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 4, p. 3009.]

2. SAME—COMMERCIAL DESIGNATION—ARTICLES NOT GENERAL MERCHANDISE.

Where commodities are not kept in stock nor dealt in as articles of general merchandise, but are made only to the order of those requiring them, conditions are not such as to allow the establishment of a trade designation.

3. STATUTES—EVIDENCE OF CONGRESSIONAL INTENT—LETTERS TO COMMITTEE.

In ascertaining legislative intent a court is authorized to look only at the language employed by Congress, and a communication by a manufacturer seeking the enactment of a certain tariff provision, written to the Ways and Means Committee, may not be considered.

Buffington, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

For decision below, see 153 Fed. 591.

Jasper Yeates Brinton, Asst. U. S. Atty. (J. Whitaker Thompson, U. S. Atty., on the brief), for the United States.

W. Wickham Smith (Francis Fisher Kane, on the brief), for importers.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

GRAY, Circuit Judge. This is a petition by C. Wesley Thomas, collector of customs for the port of Philadelphia, to review a decision of the Circuit Court for the Eastern District of Pennsylvania, affirming a decision of the Board of United States General Appraisers with respect to the classification of certain merchandise imported into the port of Philadelphia by F. B. Vandegrift & Co. in November and December, 1902.

The merchandise was invoiced as "arched Puryes furnaces," and was classified by the collector under the second clause of paragraph 152 of the Tariff Act of July 24, 1897 (chapter 11, Schedule C, 30 Stat. 163 [U. S. Comp. St. 1901, p. 1641]), as "welded cylindrical furnaces," and the appropriate duty assessed thereon at 2½ cents per pound. The importers duly protested on the ground that the merchandise was properly dutiable at 2 cents per pound under the first clause of the same paragraph as "lap welded, butt welded, seamed, or jointed iron or steel boiler tubes, pipes, flues, or stays."

Upon hearing by the Board the protest was sustained in an opinion filed April 29, 1903; and from the decision of the Board so rendered the collector duly filed his petition for a review; and subsequently, upon formal reference for that purpose, additional testimony was taken both for the importer and for the government.

Paragraph 152 of the tariff act of 1897, under which the present controversy arises, is as follows: ,

Lap welded, butt welded, seamed, or jointed iron or steel boiler tubes, pipes, flues, or stays, not thinner than number sixteen wire gauge, two cents per pound; welded cylindrical furnaces, made from plate metal, two and one-half cents per pound.

The opinion of the Board of Appraisers is as follows:

The merchandise in question consists of so-called steel tubes or boiler flues. Duty was assessed thereon at the rate of 2½ cents per pound under the clause of paragraph 152 of the act of July 24, 1897, which provides for "welded cylindrical furnaces, made from plate metal." The importers claim that the merchandise is properly dutiable at the rate of 2 cents per pound under the first clause of said paragraph, which provides for "lap welded, butt welded, seamed, or jointed iron or steel boiler tubes, pipes, flues, or stays."

The question raised here was passed upon by this Board in Re Saunders & Masters (protest 93,418f, unpublished opinion filed November 3, 1902), adversely to the government. These articles are not furnaces, but are tubes used for making furnaces.

Following that ruling, we sustain the protests and reverse the decision of the collector.

The articles in question are manufactured of plate metal, cylindrical in form, lap welded, 7 or 8 feet in length, 46 inches in diameter,

nine-sixteenths of an inch in thickness, and corrugated. As thus appearing, without any reference to any intended use to which they might be put, they are simply tubes or cylinders, in formation like any other tubes or cylinders of larger or smaller dimensions, perfectly plain on the inside, where nothing is presented but the inner surface of the corrugated iron constituting the tube or cylinder. It would seem impossible to classify such articles otherwise than under the first subparagraph of paragraph 152, above quoted—that is, as "lap welded, iron or steel tubes or flues not thinner than number sixteen wire gauge." The classification of merchandise of substantially the same description was a matter of judicial determination in the case of In re Whitney, decided in 1892 in the Circuit Court for the District of Delaware. 53 Fed. 235. In that case the Board of General Appraisers had found articles like these dutiable under the language of the first subparagraph of paragraph 152, which then constituted paragraph 157, Schedule C, of the revenue act of October 1, 1890 (chapter 1244, 26 Stat. 578), which did not contain the second subparagraph of paragraph 152 above referred to. The government contended that the imported articles were dutiable under the provisions of paragraph 215, Schedule C, of the same act, as "manufactures, articles, or wares not specially enumerated in this act composed wholly or in part of iron, steel," etc., and brought the question before the Circuit Court by an application for review of the decision of the Board of General Appraisers.

In discussing the character of the articles in question, with reference to their proper classification, the learned judge said:

The imported articles consisted of certain ribbed steel cylinders, each one being 9½ feet in length, 45 inches in diameter, flanged at one end, and weighing 3,401½ pounds. They were manufactured at Sheffield, England, and the respondent is the sole importer of them in the United States. They are not kept in stock, but are made to order and delivered to the purchaser in the condition in which they leave the factory. The importations in question were designed and adapted for the boilers of steamboats which were being built for the Stonington Line by the Harlan & Hollingsworth Company. The manner of their use may be described in the language of the government's witness (Kafer) in answer to the question:

What is it necessary to do to them [the cylinders] before they are in a condition to be practically used in the boiler by having a fire built in them? A. Holes will have to be drilled in the flanges at either ends, holes being drilled in other parts of the boiler to correspond; rivets inserted in these holes, riveted up; the same made tight by calking. The bridge walls and grate bars are inserted in their proper places. A front is put in with a furnace door. Coal is put in the furnace. I am presuming now that other parts of the boiler are properly constructed. The coal may then be ignited.

When thus ready for use in a boiler, all of the cylinder, except about 6 inches at the front, would be surrounded by water. The cylinder has now become, in part, practically a furnace, and, as contended by the appellant, is no longer, if it ever was, a boiler flue, such as is provided for in paragraph 157, above quoted. On the other hand, it is claimed that the cylinders are none the less flues from being partly converted into furnaces after they have been put in place in the boiler.

A flue may be defined to be a pipe, tube, or passage for the conveyance of the products of combustion—flame, smoke, hot gases, heated air, etc. The practical operation of the Purves flue is this: After the fire has been started, the smoke, flame, and hot air pass over the bridge wall into the bridge-wall connection, thence through the direct flues to the back connection, and thence

through the return flues to the uptake. The grate bars and bridge wall fill up from one-half to two-thirds of the cylinder, according to the length of the latter, which varies from 9 to 18 feet, so that some portion of it is used as a flue independently of the furnace appliances. This cylinder differs from the old-fashioned boiler flue in the use to which it is applied, but does it differ so widely as to lose the descriptive name and meaning of "flue"? It is a comparatively modern production, and has been largely substituted for the rectangular furnace in marine boilers. * * *

The most conclusive evidence on the question of nomenclature is perhaps that furnished by the advertisements of the Continental Iron Works, of Brooklyn, N. Y. This concern is a large manufacturer of corrugated furnace flues, which are similar in all essential features to the Purves ribbed flues and are applied to the same uses; the only difference being that the former are corrugated and the latter are ribbed. In the Scientific American, the Iron Age, Power, and similar publications, running through the years 1887, 1888, 1889, 1890, and 1891, may be found the following advertisement:

"The Continental Iron Works, Brooklyn, N. Y. Sole manufacturers of corrugated boiler flues, under their own patents and those of Samson Fox, of Leeds, England. Made in all sizes, with flanged or plain ends."

The classification thus judicially determined has been followed ever since by the departmental administration of the customs.

It is argued, however, on behalf of the government, that in the tariff act of 1897 there was added to the paragraph just considered the second subparagraph of paragraph 152, as follows: "Welded cylindrical furnaces made from plate metal, two and one-half cents per pound."

Reading, however, these two paragraphs as they stand in the act of 1897, it is difficult to see, apart from any evidence as to the use of these tubes or cylinders, why the classification under the first subparagraph, which has been adhered to by the customs administration ever since the decision in the Whitney Case in 1892, should be changed so as to include these plain tubes or cylinders under the description of welded cylindrical furnaces.

It has been shown by the testimony that these tubes or cylinders, after they were imported from abroad or manufactured in this country, were fitted up with elaborate structures on the inside of the same, consisting of fire brick, grate bars, horizontal and vertical plates, heads riveted on the flanges at either end, and a fire door at one end, with an elaborate system of pipes to carry off the products of combustion. When thus completed they undoubtedly were, and were properly called, furnaces. A number of witnesses were also introduced, whose testimony was to the effect that these tubes or cylinders, in the condition in which they were imported, were spoken of by those using or importing them as furnaces, and in fact they were so invoiced in the present case; but this convenient mode of designating them by the use to which they were to be put cannot change the essential character of the article itself. No such trade designation has been shown as comes within the rule applicable in such cases. In fact, the conditions were not such as to allow of a trade designation, as these articles were not kept in stock or dealt in as articles of general merchandise, but were only made to the order of those requiring them. To classify these articles as furnaces would, we think, be doing violence to the ordinary meaning of language, which should always, in the first instance, be resorted to in the interpretation of legislative acts,

as well as be in violation of that canon of construction of taxing laws which forbids any tax burden to be imposed except by clear and unequivocal language. We think the Board of General Appraisers tersely and correctly covered the case by saying: "These articles are not furnaces, but are tubes used for making furnaces."

We cannot agree with the counsel for the government as to the weight to be attached to the communication addressed to the Committee on Ways and Means of the House of Representatives, by the Continental Iron Works, dated January 4, 1897, upon the suggestion made in which communication they ask us to infer that the second subparagraph of paragraph 152 of the act of 1897 was inserted. It is true that the communication was from a manufacturer interested in the protection to be derived from a higher duty upon the articles he was manufacturing. But we are only authorized to look at the language employed by Congress, who seem either to have disregarded the suggestion or misunderstood what was required by the manufacturer to accomplish his object. If furnaces are imported in the construction of which tubes or cylinders like the articles here in question are used, they will be subject to the duty imposed by the second subparagraph of section 152; and it will not be difficult to distinguish them from the simple tubes or cylinders which are the subject of the importation with which we are here concerned.

It is interesting to note that the writer of the above-mentioned communication is the same whose advertisement is referred to by Judge Wales in the Whitney Case as describing themselves as manufacturers of corrugated furnace flues, simply, similar in all particulars to the importation here in question.

We think the judgment below should be affirmed, and it is so ordered.

BUFFINGTON, Circuit Judge, dissents.